Wright, J.,
delivered the opinion of the Court.
The complainant, Fain, as the administrator of Moore, is .•a creditor of the firm of Jones & Smith — composed of James ,H. Jones and Caleb Smith — and files this attachment bill with a view to reach certain funds and assets in the hands of the •■firm of James H. Jones & Co., which he alleges are equitably .liable to the satisfaction of his demand. It is shown that this latter firm received from the firm of Jones & Smith certain .spun thread, and other merchandize, which have been con-uverted into money; and relief is sought upon the ground that *309 Jones & Smith, which the creditors of the latter firm have a right to subject to the payment of their debts. The partnership of James II. Jones & Co. was the said James IT. Jones and William P. Jones, who were brothers, and both of whom are dead — the latter having survived the former. The defendant, T. M. Jones, is the administrator of the said William P. Jones, into whose hands, as the surviving partner, the assets of said firm went; and the decree is sought against the said T. M. Jones in his representative capacity.
The complainant, M. A. Cassady, is the widow and executrix of James IT. Jones, and files her bill seeking the very same decree demanded by the said Fain, namely, that the debt due the estate of said Moore may be paid by the assets of James H. Jones & Co., in the hands of T. M. Jones, as the administrator of William P. Jones, upon the footing of the indebtedness of said firm to the firm of Jones & Smith.
The complainants, in each of these bills, must stand or fall upon the rights and equities of the said James H. Jones and Caleb Smith. If they could have no valid claim to the decree now sought against T. M. Jones, as the administrator of William P. Jones, neither can Eain, as a. creditor of Jones & Smith, or Cassady, as the executrix of James H. Jones. The general creditors of a firm have no lien upon the partnership assets if the partners themselves have none. The claim of the creditors must be worked out through the equities of the partners; and if they have none, neither have the creditors.
The inquiry here then must be, what were the equities of the firm of Jones & Smith against James H. Jones & Co. ? Could the former firm have had a decree against the latter upon the principle of these bills ? James H, Jones & Co. were merchants, but in order to collect the debts due them from their creditors, occasionally purchased and drove hogs into the Southern market for sale. In the fall of 1848 they purchased a drove, which, Avith some of their own — in all over three hundred head — they carried to the State of North Carolina, and, at the house of one Barkley, as we are satisfied from the proof, sold them to Jones & Smith, who, after *310 they had disposed of them by sale, purchased of said Moore another lot of hogs upon time. In this way the debt to said Moore was created. The spun thread, and other merchandize above mentioned were derived from the sales of this latter drove, and were placed in the hands of the firm of James H. Jones & Co. by Jones & Smith, in the lifetime of James II. Jones. The sale of the hogs at Barkley’s, unless then paid for, created, of course, a debt from Jones & Smith to James IT. Jones & Co. We haye not the least evidence that any payment was then made. Hone is spoken of by the witnesses, and we are not authorized, from anything in this record, to suppose there was any. It would have been unusual, and we do not believe that Jones & Smith had the means to do so. The burthen of proof, as to this matter, is upon complainants, and the presumption of indebtedness is not removed. This is decisive of the case. It is certainly true that it is not directly shown on what account this thread and merchandize were placed in the hands of James H. Jones & Co. But it is shown to have been done with the assent of both Smith and James H. Jones. The latter declared that he had exchanged the bacon for spun thread, to go to the firm of James H. Jones & Co. But thi3 is immaterial. Whether it were directed to be sold and applied to the indebtedness to this last named firm, or was only placed with them on deposit for sale, it would, upon general principles, be alike inequitable and unjust to prevent Jones & Smith, or the complainants, to subject this fund, so long as the indebtedness to James H. Jones & Co. remained, unless there be an excess beyond what will pay them, which is not the case here. If it were intended to he a payment, as we are inclined to believe, then there was nothing to attach. And in either aspect of this case, the equity of the defendants to hold this fund is superior to that of complainants. This will appear from the case of Nolen v. Crook et al., 5 Hum., 312.
We are satisfied that Smith had no interest in the hogs purchased by James H. Jones & Co. until he and James H. Jones purchased them at Barkley’s: and that William P. *311 Jones had no share in either of the droves after that time, and his repeated statements that he had not, had reference to this period, since, it is clear, he had an interest in the first •drove, until the sale above spoken of. And his anxiety that Jones & Smith should not lose upon the hogs, is readily accounted for in his desire to save the debt to James H. Jones & Co.
It is true that nothing appears upon the mercantile books of James H. Jones & Co. either as to the indebtedness of Jones & Smith to them, or as to the proceeds of the sale of the thread and other merchandize. But we think this can make no difference, since there must have been an indebtedness to James H. Jones & Co. for the hogs sold at Barkley’s; and we are wholly unable to see how it was paid unless in the proceeds of the thread and merchandize; and it is shown that the books of this firm -were not very accurately kept.
It is supposed and argued that there is a fatal conflict between the answer filed by the defendant, T. M. Jones, to the bill of M. A. Cassady, and the one subsequently filed to the bill of Moore. But we think both answers may very well stand together, and are consistent.
The same result might, perhaps, be attained upon other grounds. The Chancellor denied complainants any relief, and we affirm his decree.